UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )   Cr. No. 16-060 WES
                                    )
OLGA LIDIA SANDOVAL                 )
_____)

ORDER

WILLIAM E. SMITH, District Judge.

This matter is before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 82, "Motion to Vacate") filed by Defendant Olga Lidia Sandoval. The Government has filed a motion to dismiss the Motion to Vacate (ECF No. 83, "Motion to Dismiss"). For the reasons stated herein, the Motion to Dismiss is GRANTED and the Motion to Vacate is DENIED and DISMISSED.

I. Background[1]

On May 1, 2017, Sandoval entered a guilty plea to charges of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841 and § 846 (Count 1), and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 (Count 2). She was sentenced on June 29, 2017, to concurrent terms

---

[1] The information in the Background section is taken from the Motion to Vacate and the Court's docket.

of 84 months imprisonment on each count, followed by five years of supervised release on each count, also to run concurrently. Judgment entered on July 11, 2017. An Amended Judgment was entered on July 12, 2017. Pursuant to the Plea Agreement (ECF No. 52), Sandoval did not appeal.

On October 31, 2017, Sandoval filed a Motion for Hardship Credit for Hardtime Served ("Motion for Hardship Credit," ECF No. 80). The Court denied the Motion for Hardship Credit by text order on November 27, 2017.

On August 8, 2018, Sandoval filed the Motion to Vacate, with accompanying memorandum ("Sandoval Mem.," ECF No. 82-1).[2] The Government filed the Motion to Dismiss on August 19, 2018. Sandoval subsequently filed a response to the Motion to Dismiss ("Response," ECF No. 84), to which the Government filed an answer ("Reply," ECF No. 85).

II. Law

A. Standard of Review

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

---

[2] The Motion to Vacate was given to prison authorities for mailing on August 8, 2018, and is deemed filed on that date. See Houston v. Lack, 487 U.S. 266, 276 (1988). The Court docketed the Motion to Vacate on August 14, 2018.

> States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited. A court may grant relief pursuant to § 2255 in instances where the court finds a lack of jurisdiction, a constitutional error, or a fundamental error of law. United States v. Addonizio, 442 U.S. 178, 185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Id. (internal quotation marks omitted). Moreover, § 2255 is not a substitute for direct appeal. Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing cases).

B. Timeliness

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996 "imposed significant new constraints on proceedings under section 2255. Some of these constraints were temporal; for example, AEDPA established a one-year statute of limitations for filing a section 2255 petition." Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008) (citing 28 U.S.C. § 2255(f)) (internal footnote omitted). Section 2255(f) states:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

III. Discussion

Sandoval presents three grounds for relief in the Motion to Vacate. First, she alleges that her "privacy right's [sic] under the 4th Amendment search & seizure were violated when the government and/or it's [sic] agents obtained the Defendant's location and phone calls without a warrant from the wireless carrier." Motion to Vacate 4. Second, she claims that she received ineffective assistance of counsel regarding her guilty plea. Id. at 5. Third, she argues that she should not be deported under the Supreme Court's decision in Sessions v. Dimaya, 138 S.Ct. 1204 (2018).

The Court need not address the merits of Sandoval's claims, however, because it concludes that the Motion to Vacate is untimely.

As noted above, Sandoval did not file a direct appeal. Therefore, her conviction became final when the time for filing an appeal, fourteen days, expired on July 25, 2017. Fed. R. App. P. 4(b)(1)(A).[3] Accordingly, Sandoval had until July 25, 2018, to file a timely motion to vacate. Sandoval's Motion to Vacate, filed on August 8, 2018, is therefore untimely under § 2255(f)(1).

Sandoval, however, contends that the Motion to Vacate is timely based on new Supreme Court case law. Motion to Vacate at 10. The Court addresses the timeliness issue with respect to each of Sandoval's claims. See Capozzi v. United States, 768 F.3d 32, 33 (1st Cir. 2014) (per curiam) (holding that "the period of

---

[3] Rule 4(b)(1)(A) provides:

> In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of:
>
> (i) the entry of either the judgment or the order being appealed; or
>
> (ii) the filing of the government's notice of appeal.

Fed. R. App. P. 4(b)(1)(A).

limitation in 28 U.S.C. § 2255(f) should be applied on a claim-by-claim basis").

A. Ground One

Sandoval contends that her "Fourth Amendment rights were violated when the Government and its agents used illegal warrants violating her privacy when they did not get a warrant from her wireless carrier to obtain cellular information from [her]." Sandoval Mem. 1. Sandoval's claim is clearly untimely under § 2255(f)(1). However, Sandoval argues that the Motion to Vacate is timely based on "New Supreme Court Case Law," Motion to Vacate 4, 10, specifically Carpenter v. United States, 138 S. Ct. 2206 (2018); see also 28 U.S.C. § 2255(f)(3).

In Carpenter, the Supreme Court addressed the question of "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." 138 S. Ct. at 2211. The Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI."[4] Id. at 2217; see also id. at 2219 ("[W]hen the Government accessed CSLI from the wireless carriers, it invaded Carpenter's reasonable expectation of privacy

---

[4] Cell-site location information.

in the whole of his physical movements."). Therefore, the "Government's acquisition of the cell-site records was a search within the meaning of the Fourth Amendment." Id. at 2220. Further, "[h]aving found that the acquisition of Carpenter's CSLI was a search," id. at 2221, the Court "also conclude[d] that the Government must generally obtain a warrant supported by probable cause before acquiring such records." Id.; see also id. ("Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant.").

Prior to the Supreme Court's decision in Carpenter, under the Stored Communications Act, the Government was permitted "to compel the disclosure of certain telecommunications records when it 'offer[ed] specific and articulable facts showing that there [were] reasonable grounds to believe' that the records sought '[were] relevant and material to an ongoing criminal investigation.'" Id. at 2212 (quoting 18 U.S.C. § 2703(d)). That was the mechanism by which the Government obtained Carpenter's CSLI. See id. The same was apparently true in Sandoval's case. See Sandoval Mem. 2 (noting that her Fourth Amendment rights were violated "like those of Carpenter above"). In essence, Sandoval asks this Court to apply Carpenter retroactively, thereby extending the AEDPA limitation period. See id. (noting that her "privacy rights under the [F]ourth [A]mendment and under the

7

Supreme Court Case of Carpenter" were violated); see also Response 1 (noting that "this case can be made retroactive by a District Court judge").

The Supreme Court has stated that:

> When a decision of this Court results in a new rule, that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances. New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.
> New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedural might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished. This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.

Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004) (alterations in original) (internal citations, quotation marks, and footnote omitted); see also Bousley v. United States, 523 U.S. 614, 619-21 (1998); Teague v. Lane, 489 U.S. 288, 310-313 (1989). In short,

"[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." Schriro, 542 U.S. at 353 (internal citations omitted).

Here, the Supreme Court's decision in Carpenter announced a procedural, not substantive rule. The decision does not "alter[] the range of conduct or the class of persons that the law punishes." Id. Rather, the rule "regulate[s] only the manner of determining the defendant's culpability . . . ," id., by requiring the Government to obtain a warrant "[b]efore compelling a wireless carrier to turn over a subscriber's CSLI," Carpenter, 138 S.Ct. at 2221. Therefore, the new rule is procedural. See Schriro, 542 U.S. at 353.

Nor can the rule announced in Carpenter be considered a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Id. at 352 (internal quotation marks omitted). As noted above, "[t]his class of rules is extremely narrow" id., and only includes rules "without which the likelihood of an accurate conviction is seriously diminished," id. (quoting Teague v. Lane, 489 U.S. 288, 290 (1989).

Because the Carpenter decision announced a procedural, not substantive, rule, as such, it is not retroactively applicable to cases on collateral review. See id. Accordingly, it cannot serve to extend the statute of limitations under § 2255(f)(3).

B. Ground Two

Ground Two, Sandoval's ineffective assistance of sentencing counsel claim, Motion to Vacate 5, should have been brought within one year of the date her judgment of conviction became final, July 25, 2017, see 28 U.S.C. § 2255(f)(1). The allegations in that claim relate solely to the plea negotiations, not subsequent Supreme Court decisions. See Motion to Vacate 5. Consequently, Sandoval had until July 25, 2018, to bring her ineffective assistance of counsel claim. See 28 U.S.C. § 2255(f)(1). Therefore, as to Ground Two, the Motion to Vacate is time-barred.

C. Ground Three

Sandoval's final claim is that that she should not be deported under the Supreme Court's 2018 decision in Sessions v. Dimaya. Mot. to Vacate 6. Sandoval argues that she "is not removable for deportation due to the fact that her crime produced no violence and does not register as a crime of violence under the definition since there was not attempted use, or threatened use of physical force against the person or property of another." Sandoval Mem. 3; see also id. ("The defendant does not have an aggravated felony

and should not be deported and have to leave her family."). Sandoval also argues that Dimaya should be applied retroactively because it is a "new" rule that is "substantive." Response 1.

In Dimaya, the Supreme Court addressed a provision of the Immigration and Nationality Act ("INA") relating to the deportation of any alien convicted of an "aggravated felony" after entering the United States. 138 S.Ct. at 1210 (citing 8 U.S.C. § 1227(a)(2)(A)(iii)). The INA defines an "'aggravated felony' by listing numerous offenses and types of offenses, often with cross-references to federal criminal statutes." Id. at 1211 (citation omitted). The list includes "a crime of violence (as defined in section 16 of title 18 . . .) for which the term of imprisonment [is] at least one year." Id. (quoting 8 U.S.C. § 1101(a)(43)(F)) (alterations in original). Section 16 defined a "crime of violence" in part as an "offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. (quoting 18 U.S.C. § 16(b)). This clause was known as the "residual clause." Id. Based on its reasoning in Johnson v. United States, 135 S.Ct. 2551 (2015) (finding similarly worded residual clause in Armed Career Criminal Act ("ACCA") unconstitutionally vague), the Supreme Court held

that the "residual clause" at issue in Dimaya was unconstitutionally vague. Id. at 1223.

Sandoval was not convicted of, or subject to deportation for, a "crime of violence" under the INA's residual clause. Rather, she was convicted of conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin. While these are "aggravated felonies," see 8 U.S.C. § 1101(a)(43)(B) (listing, among aggravated felonies, "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18) . . .")[5] (emphasis added), they are not implicated by the "residual clause" which the Supreme Court invalidated in Dimaya. Therefore, Sandoval cannot rely on Dimaya and § 2255(f)(3) to avoid the one-year time bar.[6]

D. Equitable Tolling

In her Response to the Motion to Dismiss, Sandoval suggests that equitable tolling should apply and that the Motion to Vacate

---

[5] Section 924(c), in turn, defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2).

[6] Based on the Court's conclusion that Dimaya is inapplicable, it need not address the issue of whether Dimaya should apply retroactively to cases on collateral review.

should, therefore, be considered timely. Response 1-2 (citing Holland v. Florida, 560 U.S. 631 (2010)).

AEDPA's one-year statutory limitation period "is subject to equitable tolling in appropriate cases." Holland, 560 U.S. at 645. To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Courts have also recognized an equitable exception to the one-year statute of limitations in cases where a petitioner can prove actual innocence. McQuiggan v. Perkins, 569 U.S. 383, 386 (2013) (holding that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations"). The Supreme Court, however, cautioned that "tenable actual-innocence gateway pleas are rare . . . ." Id.

Sandoval's only argument in favor of equitable tolling is that she "is a first time non-violent offender over the age of 50 . . . ." Sandoval Mem. 2. She does not contend that some "extraordinary circumstance" prevented her from timely filing the Motion to Vacate. Holland, 560 U.S. at 649. Nor does she argue that she is "actual[ly] innocen[t]" of the crimes for which she

13

was convicted. McQuiggan, 569 U.S. at 386. Therefore, the Court finds that she has not shown that she is entitled to equitable tolling.

IV. Conclusion

The Court concludes that the Motion to Vacate is untimely under either § 2255(f)(1) or § 2255(f)(3) and that equitable tolling is not appropriate. Therefore, the Government's Motion to Dismiss (ECF No. 83) is GRANTED and Sandoval's Motion to Vacate (ECF No. 82) is DENIED and DISMISSED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability (COA) because Sandoval has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Sandoval is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
District Judge
Date: January 23, 2020